IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RONALD EUGENE COLEMAN, JR.

                         Plaintiff,

        v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                   Defendant.

OPINION AND ORDER

13-cv-216-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Ronald Eugene Coleman is seeking review of a final decision by defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying his claim for disability benefits under the Social Security Act.  42 U.S.C. § 405(g).  The administrative law judge who decided the case concluded that although plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine, depression and anxiety, he retained the residual functional capacity to perform work of medium exertion, with only occasional stooping and crouching, so long as the work is simple, routine and repetitive and low stress (defined as involving only occasional decision making and only occasional changes in the work setting) and it involves only occasional interaction with the public and with co-workers.

Plaintiff contends that the administrative law judge erred in three respects: (1) he rejected the physical limitations ascribed to plaintiff by his treating physician, in violation of the "treating physician" rule; (2) he erred in his assessment of plaintiff's credibility; and

(3) he did not account for plaintiff's limitations in concentration, persistence and pace when making his residual functional capacity finding.  Because I find that the administrative law judge acted correctly in rejecting the treating physician's assessment of plaintiff's physical limitations, in determining plaintiff's credibility and in accounting for plaintiff's specific mental limitations, I am affirming the decision.


RECORD EVIDENCE

Plaintiff Ronald Coleman was born in 1957.  He finished eleven grades in school. Before his alleged onset of disability in June 2009, he had worked in lawn care, trimming weeds and mowing lawns.  From 2001 until 2010, he also worked as a town constable.  From about 2010 through 2012, he did maintenance work for a company called Impact Seven. All of the jobs were part-time; the maintenance job was two hours a day, two days a week and involved mopping, sweeping, changing light bulbs and small repair jobs.  AR 74-78.

Plaintiff hit his neck on a garden tractor in mid-April 2010.  AR 343.  He had no immediate pain but started to have swallowing problems a few days later and saw Dr. Scott Marsan.  He told Marsan he took no medication other than Ibuprofen and that he had had no surgeries.  Id.  He had no complaints about his physical condition other than his swallowing.

Plaintiff saw Dr. Hongjing Tan, a physiatrist (a specialist in rehabilitation medicine), for a disability examination on October 25, 2010.  Tan found that plaintiff had close to normal range of motion in his back, although he complained of pain when he tried to get up

2

from a bending position, and that his examination was unremarkable for neurological deficit or radiculopathy.  AR 374.  X-rays showed "mild arthritic changes in plaintiff's spine, greatest in the low lumbar region." AR 376.  Tan noted that plaintiff was taking Ibuprofen twice a day, that he had not seen a specialist for his back pain, that he not had physical therapy recently and he had never had any injections.  AR 379.

Plaintiff saw Tan two more times, on February 27, 2012, AR 462, and on April 2, 2012.  AR 461.  At the February visit, Tan found plaintiff's range of motion normal, with mild tenderness to palpation in the right lateral hip area, normal strength and sensation and deep tendon reflexes in both legs, negative straight leg raising, negative Patrick test (for flexion, rotation and extension) and normal gait.  AR 464.  Plaintiff had answered "Yes" when asked whether he had had any unexpected unsteadiness, off balance concerns or falls.  AR 464.  He noted that "[Plaintiff] continues to complain of lower back pain.  His exam, however, is unremarkable.  He has some mild arthritis in his previous x-ray.  It is possible that he has some bulging disk." Tan suggested physical therapy, emphasized the importance of regular exercise, taking breaks at work and avoiding heavy lifting and frequent bending.  AR 465.

Dr. Tan referred plaintiff to physical therapy.  Plaintiff went four times in March 2012 and experienced decreased pain.  AR 447-51.  On March 27, the therapist set a goal of having plaintiff to come to therapy once a week for the next six weeks.  AR 457.  He went one last time on April 4, 2012, before quitting.

At his April 2, 2012 visit to Tan, plaintiff reported having had no unexpected unsteadiness, off balance concerns or falls, AR 461, which was a change from the preceding visit, when he had answered yes to that question.  Tan observed that plaintiff had no tenderness to palpation, normal range of motion, normal strength in both legs and normal gait.  AR 462.  Plaintiff had finished his physical therapy and Tan encouraged him to continue his home exercise program for the rest of his life.  Tan told plaintiff he did not need to come in on a regular basis but would be welcome to return if he had a problem again.  AR 462.

On June 22, 2012, Tan prepared a Lumbar Spine Medical Source Statement, in which he said that plaintiff had low back pain that moved into his buttocks and posterior thighs and was exacerbated by prolonged sitting, standing, lifting and bending.  AR 471.  It was his opinion that plaintiff could not sit or stand more than two hours at a time and that he could not sit, stand or walk a total of more than four hours in a regular working day with normal breaks.  AR 472.  He would need a job that allowed shifting at will from sitting, standing or walking, id., and would need to walk every hour for at least five minutes.  AR 473.  Tan found plaintiff capable of moderate and low stress work and thought he would be likely to be absent from work about one day a month.  AR 474.

Agency physician Mina Khorshidi evaluated plaintiff's medical records, which showed that he had degenerative disc disease and arthritis.  AR 399.  She noted that plaintiff's lumbar x-rays showed mild arthritic changes in his spine and his physical exam revealed near normal range of motion and no apparent distress.  Neurologically, his strength and sensation

were all intact.  He walked with a normal gait and did not use an assistive device.  She found that he could stand or walk six hours out of a day and sit for the same amount of time, lift 10 pounds frequently and 20 pounds occasionally.  AR 393.

On December 29, 2010, agency psychologist Deborah Pape found that plaintiff had organic mental disorders, affective disorders, mental retardation, anxiety-related disorders and substance addiction disorders.  AR 400.  He had difficulty concentrating or thinking, AR 403, and panic disorder with agoraphobia.  AR 405.  She concluded that he would have moderate difficulties in maintaining social functioning and concentration, persistence or pace and only mild difficulties in activities of daily living.  AR 410.  Specifically, he would be moderately limited in understanding, remembering and carrying out detailed instructions, in maintaining attention and concentration for extended periods, in performing activities within a schedule, maintaining regular attendance and being punctual, in interacting appropriately with the general public and getting along with coworkers and in responding appropriately to supervisors.  AR 414-15.  Pape determined that plaintiff's statements of his limitations and his purported inability to work were out of proportion to the objective evidence in view of his having owned his own business for 14 years, worked for the school district for 11 years and been constable of his town.  She found plaintiff capable of the basic mental demands of unskilled work.  AR 416.

At the administrative hearing held on July 10, 2012, plaintiff testified that he had back problems that made it more difficult to do his maintenance job and to ride on a lawnmower and that his memory was failing, making it hard for him to remember job

instructions.  AR 79.  He had had no surgeries or injections for his physical impairments and he took only muscle relaxants and pain pills (Ibuprofen).  AR 80-81.  He complained of pain in his lower back that fluctuated and made it uncomfortable for him to sit for any period of time.  AR 82.  He said he did dishes and vacuumed, but found it hard to stand up for long.  AR 83.  He could do the laundry at times, shop for groceries, visit friends and family and go to restaurants, AR 84, but he found it difficult to walk for any length of time.  AR 85.  He was not on medication for anxiety or depression at the time of the hearing.  AR 88.

Plaintiff testified that Dr. Tan had told him that his back was just going to get worse because of his degenerative disc disease and spinal arthritis and that his physical therapist had said he had bulging discs.  AR 91.  He described his pain as radiating down the backs of his legs, requiring him to stand and "try to stretch that out."  Id.

OPINION

Plaintiff's challenge to the administrative law judge's decision rests on three grounds.  First, that it was error for the administrative law judge to reject the physical limitations ascribed to plaintiff by his treating physician.  Citing Bauer v. Astrue, 532 F.3d 606, 608 (7th Cir. 2009), he argues that the opinion of the treating physician is to be given great weight when the physician is a specialist who has examined the plaintiff over a period of years.  Plaintiff is correct, to a point.  Under 20 C.F.R. § 404.1527(d)(2), the administrative law judge is "to give controlling weight to the medical opinion of a treating physician," but there is a caveat: "if it is 'well-supported by medically acceptable clinical and laboratory

diagnostic techniques' and 'not inconsistent with the other substantial evidence.'"  In this case, the administrative law judge gave only "some weight" to Tan's opinion, because he found no support for the limitations the doctor assessed.  As he observed in his decision, Dr. Tan's treatment notes did "not indicate any limitations, or reflect the kind of severity, which Dr. Tan has invoked in [his] opinion."  AR 27.  To the contrary, Tan characterized his physical examinations of plaintiff as "unremarkable" and reported the results of the x-rays of plaintiff's lumbar spine as showing only mild arthritic changes.

The Court of Appeals for the Seventh Circuit has held that such internal inconsistencies may provide good cause for denying controlling weight to a treating physician's opinion.  In Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995), for example, the court agreed with the administrative law judge's finding that the doctor's treatment notes did not support his opinion that the claimant was disabled by degenerative disc disease.  The notes showed that plaintiff was able to walk on either her heels or toes, had equal deep tendon reflexes, experienced no lack of pinprick sensation and her prescribed treatment was limited to rehabilitative back exercises and medication.

Plaintiff says it was absurd for the administrative law judge to reject the opinion of his treating physician on the ground that the doctor had seen plaintiff only three times and then adopt the opinions of the agency doctors who never saw plaintiff at all.  But the administrative law judge explained that he gave the opinions of the agency physicians "great weight" because they were consistent with Dr. Tan's initial assessment of plaintiff in October 2010.  Plaintiff takes issue with this explanation, arguing that the administrative law judge

7

never considered that plaintiff's condition might have worsened between October 2010 and the date of Tan's Medical Source Statement.  If it did, it was not reflected in Dr. Tan's February 2012 and April 2012 medical notes.

Plaintiff's second objection is to the administrative law judge's refusal to give credence to plaintiff's statements about the intensity, persistence and limiting effects of the symptoms of his physical impairments.  The administrative law judge explained the grounds for his determination in his decision:

1. Plaintiff saw a doctor for neck pain in April 2010, after injuring his neck in a fall from his garden tractor, but never said anything to the doctor about any other medical problems.

2. Plaintiff's three visits to Dr. Tan in 2010 and 2012 revealed no neurological deficit or radiculopathy worth remarking.

3. Plaintiff did not complete the course of physical therapy that Dr. Tan prescribed.

4. Plaintiff had never had injections or surgery for his back pain and he took only Ibuprofen for his pain.

5. Plaintiff's ability to work part-time doing maintenance, light cleaning and lawn mowing and do dishes and laundry, drive, cook, vacuum and shop was not consistent with his reports of the alleged effect of his impairments.

Plaintiff says that in relying on his failure to finish his physical therapy sessions, the administrative law judge did not consider whether plaintiff had the financial means to continue.  However, plaintiff testified at his hearing that he had insurance coverage under

BadgerCare (Wisconsin's Medicaid program) during the two years prior to the hearing.  His own notes indicate that BadgerCare covered physical therapy, AR 437, although he wrote in April 2012 that BadgerCare had told him and Dr. Tan that physical therapy was not covered.  AR 301.  Dr. Tan made no note to that effect in his record; he simply wrote on April 2, 2012 that plaintiff had "finished his physical therapy."  AR 461.  It was reasonable for the administrative law judge to rely on plaintiff's testimony given under oath at his hearing in finding that lack of insurance coverage was not the reason plaintiff stopped the therapy sessions.

In sum, I am persuaded that the administrative law judge's findings were sufficient to support his determination that plaintiff overstated the effects of his symptoms.

Plaintiff's final challenge to the adverse decision is that the administrative law judge did not account adequately for plaintiff's limitations in concentration, persistence or pace when he made his residual functional capacity finding.  The administrative law judge adopted the opinions of the state agency psychologists, Dr. Deborah Pape and Dr. Jack Spear.  (Spear reviewed Pape's opinion on June 1, 2011 and affirmed it without any changes. AR 432.)  Both had determined that although plaintiff had moderate limitations in concentration, persistence or pace, he was still capable of performing the demands of unskilled work.  AR 416, 432.  Relying on those opinions, the administrative law judge limited plaintiff to "simple, routine and repetitive tasks" in a job that is

> low stress, defined as having occasional decision making and only occasional changes in the work setting; and further limits including only occasional interaction with the public and with coworkers that do not require more than occasional public contact and occasional contact with coworkers.

9

The vocational expert testified that such an individual could still perform work as a groundskeeper, provided it did not involved sophisticated lawn cutting equipment. AR 95. He could also do the jobs of unskilled machine feeder, of which there would be about 5,000 in Wisconsin or unskilled assembly (7,500 in Wisconsin) or hand packager (15,000 in Wisconsin). If the individual could perform only light work with only occasional stooping and crouching, he could still perform work as a groundskeeper and the three jobs identified by the vocational expert but only about half of the identified jobs available in Wisconsin would be within his capabilities. AR 97. If the individual could perform only sedentary work, he could not perform his past work as he had performed it or as it is customarily performed but he could still perform some assembly jobs, of which there are about 3,000 to 4,000 in Wisconsin, as well as surveillance monitor, of which there are about 3,000 jobs.

Plaintiff argues that the terminology used by the administrative law judge does not "encapsulate his limitations in concentration, persistence or pace." Citing O'Connor-Spinner v. Astrue, 627 F.3d 614, 620-21 (7th Cir. 2010), plaintiff contends that general terms like "routine and repetitive tasks" do not account adequately for mental, nonexertional restrictions in concentration, persistence or pace. In O'Connor-Spinner, the court of appeals stated that, "for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the [vocational expert's] attention on these limitations and assure reviewing courts that the [vocational expert's] testimony constitutes substantial evidence of the jobs a claimant can do." Relevant to this case, the court stated that, "[i]n most cases . . . employing terms like 'simple,

10

repetitive tasks' on their own will not necessarily exclude from the [vocational expert's] consideration those positions that present significant problems of concentration, persistence and pace." Id. at 620.  However, the court also emphasized that "[w]e have not insisted . . . on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." Id. at 619.  For example, an administrative law judge need not use those terms when it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." Id.  In other words, the lesson from O'Connor-Spinner is not that the administrative law judge must use a particular term when setting forth the plaintiff's residual functional capacity, but rather that the language he uses must reflect all of the limitations that the plaintiff has.   Id. (administrative law judge must "ensure that the [vocational expert] is apprised fully of the claimant's limitations").

     In this case, the administrative law judge did not stop with saying that plaintiff could perform only simple, routine and repetitive tasks.  He added the additional limitation of a low stress job, which he defined as having only occasional decision making, as well as the limitations of only occasional changes in the work setting, only occasional interaction with the public and only occasional interaction with coworkers.  AR 98.  This formulation of plaintiff's restrictions captured the agency psychologist's assessment that plaintiff had moderate limitations understanding, remembering and carrying out detailed instructions, maintaining regular attendance and being punctual, interacting appropriately with the general public and getting along with coworkers.  It was not a perfect recitation of the

11

limitations the psychologist had assessed; the administrative law judge left out the areas of maintaining attention and concentration for extended periods, performing activities within a schedule and responding appropriately to supervisors that Dr. Pape had characterized as moderate limitations.  However, it was minimally adequate, particularly in light of Dr. Pape's (and Dr. Spear's adoption of her conclusions) that plaintiff is "capable of the mental demands of 'unskilled work.'"

The administrative law judge did not fail to specify plaintiff's limitations as in O'Connor-Spinner.  Accordingly, his hypothetical did not mislead the vocational expert about the nature of the tasks that plaintiff could perform.


ORDER

IT IS ORDERED that plaintiff Ronald Eugene Coleman, Jr.'s motion for summary judgment is DENIED and the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 10th day of March, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

12